UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSE A. ZAVALA,

                            Plaintiff,

     -against-                               5:11-CV-1403 (LEK/DEP)

CORNELL UNIVERSITY,

                            Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Before the Court is Defendant Cornell University's ("Defendant") second Motion for judgment on the pleadings. Dkt. Nos. 23 ("Motion"); 23-1 ("Memorandum"). For the following reasons, the Motion is denied.

**II.    BACKGROUND**[1]

Defendant employed Plaintiff Jose A. Zavala ("Plaintiff") as a network technician, specifically as a member of the Backbone team. See Dkt. No. 18 ("Amended Complaint") ¶ 11. Plaintiff suffered from type 1 diabetes mellitus with complications during the entirety of the relevant period. Id. ¶ 5. In October 2009, Plaintiff sought treatment for swelling of his right foot and was diagnosed with early-stage kidney failure. See id. at 15. Plaintiff then asked his supervisor Jeremy Butler ("Butler") for a reduction in duties requiring walking, to which Butler responded by assigning Plaintiff to tasks that required more walking. Id. ¶ 20(a); Id. at 23-25 ("EEOC Application").

---

[1] On a Rule 12(c) motion the Court accepts a plaintiff's factual allegations as true, and resolves all factual inferences in plaintiff's favor. See In re Thelen, 736 F.3d 213, 218 (2d Cir. 2013). Thus, the allegations in the Amended Complaint form the sole basis for this section.

At a February 2010 meeting to discuss Plaintiff's yearly performance evaluation, Butler told Plaintiff that he had been downgraded because he had missed time for medical appointments, which slowed the progress of the team. Id. ¶ 20(b). Plaintiff refused to sign his performance evaluation; Director of Operations Sasja Huijts ("Huijts") threatened Plaintiff and demanded that he do so. Id. ¶ 20(c)-(d). Plaintiff applied for and took a three-week leave to address his and his wife's respective health conditions. Id. ¶ 20(e).

When Plaintiff returned to work, Huijts placed Plaintiff on restrictive duty, assigned Plaintiff to a customer service position, and failed to return Plaintiff's tools and regular company vehicle. Id. ¶ 20(f). Huijts also told Plaintiff to apply for permanent disability. Id. ¶ 20(g). In order to return to his previous position, Plaintiff gave Huijts a fit-for-duty letter from a nurse practitioner, which Huijts rejected. Id. ¶ 20(h). Plaintiff requested and received a meeting with human resources manager Mittman ("Mittman"), who both ignored Plaintiff's grievances and failed to keep the content of the meeting confidential as required by Defendant's employment policies. Id. ¶¶ 20(i), 20(l). After presenting his supervisors with another letter signed by his doctor, Plaintiff returned to work, but broke his foot on June 6, 2010. Id. ¶¶ 20(j), 20(m). Plaintiff requested a light-duty accommodation, but Defendant refused. Id. ¶ 20(m).

Plaintiff went on short-term disability until October 2010. Id. ¶ 20(n). When Plaintiff returned to work, Huijts reassigned Plaintiff from the Backbone team to another group, took away his tools and truck, and warned Plaintiff not to challenge the reassignment with human resources. Id. Huijts claimed that she reassigned Plaintiff because he was under a temporary no-ladders restriction, but both the Backbone team and Plaintiff's newly assigned team use ladders. Id. Plaintiff's new position involves substantially less complex, fulfilling, and prestigious work than the

2

Backbone team. Id. Additionally, unlike the Backbone team, which receives substantial overtime, Plaintiff's new team receives "little if any overtime." Id. Plaintiff again met with Mittman, who instructed Plaintiff to speak with another human resources representative if he believed his transfer was discriminatory. Id. ¶ 20(p). Plaintiff did so, and the representative offered to return Plaintiff to his position on the Backbone team under Huijts's and Butler's supervision; Plaintiff refused. Id. ¶ 20(q).

In April 2011, Plaintiff again received a negative job evaluation. Id. ¶ 19(b). The evaluation cited missing tools and poor morning time management. Id. However, the tools were not actually missing, and Plaintiff's poor morning time management was due to Defendant taking away Plaintiff's vehicle, causing him to rely on other technicians for transportation to job sites. Id. On August 19, 2011, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and New York State Division of Human Rights ("DHR"). Am. Compl. at pages 23-25.

Plaintiff commenced this action by filing a Complaint bringing claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Dkt. No. 1 ("Complaint"). Defendant filed an Answer and a Motion for judgment on the pleadings. Dkt. Nos. 9; 14. The Court granted Defendants' first Motion, but in light of Plaintiff's *pro se* status, allowed him the opportunity to amend his Complaint. Dkt. No. 17 ("Order").

Plaintiff then filed the Amended Complaint.[2] Defendant answered the Amended Complaint, and filed the second Motion. Dkt. No. 21 ("Answer"); Mot. Plaintiff responded, and Defendant replied. Dkt. Nos. 27 ("Response"); 28 ("Reply").

---

[2] In both his Complaint and Amended Complaint, Plaintiff declined to assert New York State Human Rights Law claims analogous to his ADA claims.

3

## III.  LEGAL STANDARD

To survive a Rule 12 motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in a plaintiff's favor.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A motion brought under Rule 12(c) is decided under the same standard a 12(b)(6) motion, except that it is brought after the close of the pleadings, implicating the pleadings as a whole.  See 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1367 (3d ed. 2013).  The 12(c) motion attempts to resolve claims solely on issues of law and Plaintiff's alleged facts.  See In re Thelen, 736 F.3d 213, 218 (2d Cir. 2013).

## IV.  DISCUSSION

Plaintiff asserts claims under the Americans with Disabilities Act.[3]  Defendants argue that: (1) Plaintiff's claims are time-barred because he filed his EEOC claim more than 180 days after the

---

[3] Defendants have only addressed the Amended Complaint's disparate treatment claim.  See generally Mem.  In light of Plaintiff's *pro se* status, the Court has a duty to read his pleadings liberally.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In addition to claims for discriminatory treatment and hostile work environment, the Court finds that the Amended Complaint also fairly raises claims for failure to provide reasonable accommodation and retaliation.  See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (stating *prima facie* standard for failure to reasonably accommodate claim: (1) "plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform essential functions of the job at issue; and (4) the employer refused to make such accommodations"); Ragusa v. Malvern Union Free Sch. Dist., 381 F. App'x 85, 89 (2d Cir. 2010) (stating *prima facie* standard for retaliation claim: "(1) [plaintiff] engaged in ADA-protected activity (2) of which defendants were aware, (3) she was subjected to an adverse employment action, and (4) a causal connection existed between the adverse employment action and her protected activity") (citing Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002)); Am. Compl. ¶ 7 (alleging that Plaintiff's request for accommodation resulted in his reassignment).

4

alleged conduct; and (2) Plaintiff has not alleged an "adverse employment action." Mem. at 6-18.

**A. Disparate Treatment ADA Claim**

To establish a *prima facie* case of disparate treatment under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform essential functions of his job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of his disability. See Giordano v. City of N.Y., 274 F.3d 740, 747 (2d Cir. 2001). Defendants do not challenge that Plaintiff's pleadings satisfy the first three factors; rather, they argue that Plaintiff has not alleged an "adverse employment action."

An adverse employment action is a "materially adverse change in the terms, privileges, duration and conditions of employment." Treglia, 313 F.3d at 720. Adverse employment actions may include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Patrolmen's Benevolent Ass'n v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002) (alteration in original and quotation marks omitted). Defendant claims that the only potential adverse employment action is Plaintiff's reassignment to a different team and that, because Plaintiff refused the offer to return Plaintiff to the Backbone team, the reassignment cannot constitute an adverse action. See Mem. at 13-18.

*1. Reassignment*

A "reassignment with significantly different responsibilities" is actionable under the ADA. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). However, such reassignment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Sanders v.

5

N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" Wanamaker v. Colombia Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). Plaintiff states that, whereas the Backbone team works on hundreds of network lines at a time and does complex work, his new team does only less complex and rewarding single-line work. Plaintiff also alleges lost overtime pay as a result of the transfer.

The Amended Complaint's allegations of economic harm and a material change in responsibilities suffice to establish an adverse action. See, e.g., Ramazzotti v. El Al Israel Airlines, No. 91 Civ. 6543, 1994 WL 132275, at *3 (S.D.N.Y. Apr. 14, 1994) (holding that reassignment resulting in loss of overtime and responsibility was sufficient to constitute adverse action). That Plaintiff declined an offer to return to the Backbone team does not alter the fact that, at least for some time, he was reassigned without the right to return to his former position.[4] At this stage of the litigation, Plaintiff has alleged sufficient facts to state a claim for discriminatory treatment based on the reassignment.

### 2. Negative Performance Evaluations and Fit-to-Work Letter

"As a matter of law, an unsatisfactory performance evaluation alone does not amount to an adverse employment action because such evaluation does not constitute a material change in employment." Davis v. N.Y.C. Dep't of Educ., No. 10-CV-3812, 2012 WL 139255, at *6 (E.D.N.Y. Jan. 18, 2012) (internal quotations marks omitted). Only where a "negative performance evaluation results in an adverse change in work conditions [may] it be considered an adverse

---

[4] The Court need not determine at this stage whether Defendant's offer to return Plaintiff to his former position bars him from recovering damages arising after the offer.

6

employment action." Id.  However, warnings and evaluations can constitute adverse actions if they lead to more substantial employment actions that are adverse.  See Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 559-70 (2d Cir. 2011) (finding that an employee counseling was not actionable because it did not place the employee in a progressive disciplinary process); Krishnapillai v. Donahoe, No. 09-CV-1022, 2013 WL 5423724, at *11 (E.D.N.Y. Sept. 26, 2013) ("Courts in this district have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.").  It is reasonable to infer that Plaintiff's transfer resulted from criticism that Plaintiff received in the performance evaluation.  Therefore, a claim that the performance evaluation was an adverse action may proceed.

Defendant's refusal of Plaintiff's right-to-work letter from the nurse practitioner after his first disability leave, which is separate from the reassignment after his second leave discussed *supra*, also caused material detriment to Plaintiff's employment.  Plaintiff was forced to continue working in a low-level customer service job despite being able to return to the Backbone team.  Plaintiff's loss of overtime pay and reassignment to less fulfilling work during the time between the refused and accepted right to work letters renders the refusal of the letter an adverse action.

**B. Hostile Work Environment Claim**

ADA hostile work environment claims are evaluated under the same standard as a Title VII hostile work environment claim.[5]  See Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d

---

[5] Although the Second Circuit has declined to decide whether the ADA provides any basis for a hostile work environment claim, Farina v. Branford Bd. of Educ., 458 Fed. Appx. 13, 16-17 (2d Cir. 2011), trial courts have interpreted the Circuit's authorization of analogous New York State Human Rights Law ("NYSHRL") claims as tacit consent, see, e.g., Tse v. N.Y. Univ., No. 10 Civ. 7207, 2013 WL 5288848, at *13 & n. 13 (S.D.N.Y. Sept. 19, 2013) (citing Pucino v. Verizon

567, 584 (S.D.N.Y. 2008). A hostile work environment claim requires that the workplace be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 240 (2d Cir. 2007). The claim contains "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). Plaintiff subjectively perceived the backbone team environment to be abusive; he states that he declined transfer back to the more lucrative and stimulating work of the backbone team because he feared working under Huijts and Butler. Resp. ¶ 5.

The objective inquiry demands examination of "the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with' the [employee's work] performance." Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Alfano, 294 F.3d at 374 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). "A plaintiff must also demonstrate that she was subjected to the hostility because of her [disability]." Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999).

The Complaint states facts sufficient to proceed on a hostile work environment claim; Plaintiff has alleged that actions taken by Huijts and Butler, including their threats regarding

---

Wireless Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010)). The Court adopts this approach.

Plaintiff's use of internal human resources mechanisms, unreasonably interfered with Plaintiff's job performance. With knowledge of Plaintiff's mobility limitations, Defendant took away Plaintiff's vehicle, forcing him to arrange rides with other team members to and from work sites. When Plaintiff requested accommodation to work on less walking-intensive jobs, Butler responded by assigning Plaintiff to tasks that required more walking. Huijts attempted to force Plaintiff to pursue permanent disability. These alleged incidents of harassment are "'of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000) (emphasis omitted) (quoting Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997)).

**C. Limitations Period**

    *1. Discrete Instances of Disparate Treatment*

"As a predicate to filing suit under [the ADA], a private plaintiff must first file a timely charge with the EEOC." Riddle v. Citigroup, 449 Fed. Appx. 66, 69 (2d Cir. 2009). Normally, "a plaintiff may not assert claims based on events that took place more than 300 [or 180] days before the submission of an administrative charge of discrimination to the EEOC or other local employment discrimination agency." Lomako v. N.Y. Inst. of Tech., No. 09 Civ. 6066, 2010 WL 1915041, at *4 (S.D.N.Y. May 12, 2010). If a plaintiff first files a complaint with a qualifying state agency, or when the EEOC files the complaint with that agency on the plaintiff's behalf, she may recover for events occurring up to 300 days prior to filing. See Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325, 327-28 (2d Cir. 2006) (citing Mohasco Corp. v. Silver, 447 U.S. 807, 816 (1980)). The actions of Plaintiff and the EEOC availed Plaintiff of the 300 day filing period. Plaintiff signed and filed a complaint with the EEOC on August 19, 2011. Am. Compl. at 23-25.

9

The EEOC received the complaint, and forwarded it to the DHR. Id. The DHR is a qualifying state agency.[6] Therefore, Plaintiff may bring claims premised on events occurring on or after October 23, 2010—300 days before August 19, 2011.

Plaintiff further asserts that, because he submitted another, earlier complaint to the EEOC and attached the certified mail return receipt to his Response, he may file claims arising from events before October 23, 2010. See Am. Compl. ¶ 19(c). The receipt indicates that a parcel addressed to the EEOC was postmarked on July 14, 2011, and received the next day. See Resp. at 5. A statement in a complaint that the plaintiff filed an application with the EEOC is enough to survive a motion to dismiss. See, e.g., Ercole v. LaHood, No. 07-CV-2049, 2011 WL 1205137, at *2 n.1 (E.D.N.Y. Mar. 29, 2011). Not only did Plaintiff state that he filed the earlier application in the Complaint, but he also attached the return receipt to his Response. A certified mail return receipt may be dispositive proof that a party filed an administrative complaint. See Universal City Studios, LLLP v. Peters, 402 F.3d 1238, 1241 (D.C. Cir. 2005) (accepting a return receipt as proof that a copyright claim was filed). Plaintiff has done enough at this stage to show that he submitted a complaint to the EEOC on July 14, 2011, and therefore may assert claims arising on or after September 17, 2010.[7]

---

[6] The EEOC website lists the DHR as a designated Fair Employment Practices Agency and states that charges filed with the both the DHR and EEOC "raise claims under state and local laws prohibiting employment discrimination as well as the federal laws enforced by the EEOC." http://www.eeoc.gov/field/newyork/fepa.cfm.

[7] Defendant also argues that the Complaint exceeded the scope of the facts included in his EEOC complaint. Mem. at 15-18. "A district court only has jurisdiction to hear claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." Butts v. N.Y. Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993). However, this defense is unavailing at this stage; Plaintiff states that he attached the same time line of events included in the Amended Complaint to

*2. Continuing Violation*

Plaintiff argues that he may bring claims regarding his right-to-work letter and performance evaluations under the continuing violation doctrine, even though they arose before the 300 day filing deadline.[8] See Resp. at 10. In deciding whether putative discrimination qualifies as a continuing violation, courts consider three factors: (1) whether the incidents of discrimination are similar in kind; (2) whether the incidents are recurring or isolated in nature; and (3) whether the effect of the discrimination is permanent in nature, and thus should trigger an individual to assert his rights. See Berry v. Bd. of Supervisors of La. State Univ., 715 F.2d 971, 981-82 (11th Cir. 1983).[9] This list of factors is not exhaustive and "requires a fact-specific inquiry by a trial judge which cannot be easily reduced to a formula." Id. at 982. Plaintiff has sufficiently pled a continuing violation.[10]

As to the first factor, all of the incidents occurred due to decisions made by Huijts and Butler that were close in time to Plaintiff's heightened medical difficulties, including the 2009 performance evaluation, the refusal of the fit-to-work letter, the apparent threats regarding leave and disability,

---

the EEOC complaint. Am. Compl. at 14-21.

[8] A hostile work environment claim is actionable in its entirety as long as it continued into the 300 day filing period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (allowing events beyond the filing window to be claimed because the alleged discrimination "is composed of a series of separate acts that collectively constitute one unlawful employment practice").

[9] Although not controlling precedent in the Second Circuit, several district courts within the Circuit have adopted the Berry analysis as the most complete framework for analyzing a continuing violation claim. See Petrosky v. N.Y. State Dep't of Motor Vehicles, 72 F. Supp. 2d 39, 49-50 (N.D.N.Y. 1999).

[10] The same evidence often suffices to establish both a continuing violation disparate-treatment claim and a hostile work environment claim. See Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994) (affirming finding of continuing violation that was "supported by the same evidence that established her hostile-environment claim").

11

and negative consequences for following company policy and speaking with human resources.

Second, the discriminatory actions were recurring. The Court must examine whether the putative discrimination occurred as a series of isolated events, or as a "continuum of discrimination." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998). Defendant asserts that the discriminatory actions alleged in the Complaint are too infrequent to support this conclusion, identifying the allegedly discriminatory events as "two discriminatory performance reviews (issued a year apart) and assignment to a different team in between these reviews." Mot. at 9. However, Defendant omits several alleged instances of discrimination, including: the decisions to assign Plaintiff to walking-intensive tasks and to take away Plaintiff's vehicle, threats for speaking with human resources, and pressure to apply for permanent disability. Furthermore, the relative frequency of the discrimination was greater in light of Plaintiff's multiple medical leaves. The pleadings therefore state enough facts to satisfy the second Berry factor. The third factor is also satisfied: other than Plaintiff's involuntary transfer—which occurred within the statutory filing period—none of the other instances of alleged discrimination carried the requisite permanence to for Plaintiff to have concluded that he should file a claim under the ADA. Viewing the totality of the circumstances, the Court finds that Plaintiff has sufficiently pled a continuing violation.

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 23) for judgment on the pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Letter Motion (Dkt. No. 25) requesting that the Court grant the Motion for judgment on the pleadings is **DENIED as moot**;

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 21, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge